Filed 1/20/22  P. v. Felix CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078931 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1100211) |
| ALFREDO FELIX, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, John D. Molloy, Judge.  Reversed and remanded with directions.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige B. Hazard, and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

This appeal is from the summary denial of a petition for resentencing under Penal Code[1] section 1170.95. The trial court based the summary denial of the petition on the original jury conviction of first degree murder with a robbery murder special circumstance. The trial court found the true finding on the special circumstance made the petitioner ineligible for relief as a matter of law.

We recognize there is disagreement among the Courts of Appeal on how to deal with such special circumstances findings when a petition for resentencing is at the prima facie stage of review when the findings were made prior to the clarification our Supreme Court made in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). The court, in those cases, redefined the requirements to show an aider and abettor was a major participant in the crime and acted with reckless indifference to human life in order to apply the special circumstance allegation to that person.

We conclude it is improper to deny a 1170.95 petition at the prima facie stage of review based only on special circumstance findings made prior to the opinions in *Banks* and *Clark*. We will follow the reasoning from our opinion in *People v. Arias* (2021) 66 Cal.App.5th 987, review granted September 29, 2021, S270555 (*Arias*) and reverse the summary denial of the petition in this case and remand for further proceedings.

---

[1] All further statutory references are to the Penal Code.

FACTS AND PROCEDURAL BACKGROUND

In 2013, a jury convicted Alfredo Felix[2] of first degree murder (§ 187, subd. (a)), and robbery (§ 211) and found true an allegation that the murder occurred during a robbery (§ 190.2, subd. (a)(17)(A)). The jury found an alleged enhancement for personal use of a firearm to be not true. Alfredo was sentenced to life without parole plus five years in prison.

Alfredo appealed and this court affirmed the judgment in an unpublished opinion, *People v. Felix*, D066686 (Mar. 25, 2015).

In January 2021, Alfredo filed a petition for resentencing under section 1170.95. The court appointed counsel, received briefing, and held a brief hearing. The court summarily denied the petition without issuing an order to show cause (OSC) or conducting an evidentiary hearing. The court concluded the true finding on the robbery murder special circumstance established Alfredo was a major participant in the crime and acted with reckless disregard for human life as a matter of law even though the findings were made before the *Banks* and *Clark* cases were decided. The court recognized there is a split of authority among the Courts of Appeal and opted to follow the view that pre-*Banks* and *Clark* special circumstance findings for aiders and abettors in murder cases render the defendant ineligible for section 1170.95 relief as a matter of law.

Alfredo filed a timely notice of appeal.

The facts of the crime are set forth in our prior opinion. We will include them here for background information. (*People v. Felix*, *supra*, D066686.)

"On October 3, 2005, [appellant's brother] Fabian [Felix] rented a Dodge Magnum vehicle. (Undesignated date references are to the year 2005.)

_____

2      To avoid confusion, we refer to Alfredo Felix by his first name because other individuals is this opinion share Alfredo's last name.

3

The next day, Fabian, Alfredo and their cousin, Cristobal D'Arte, drove south from Waterford to Hemet, California to visit Juan Molina who had asked Fabian to bring down marijuana. Molina was married to Fabian's and Alfredo's sister.

"Molina testified that on October 4, Fabian called him and said that he was on the road on his way down to Hemet. In the early afternoon, Fabian, Alfredo and D'Arte arrived at Molina's apartment in the Dodge Magnum. Fabian did not have any marijuana with him, but told Molina he was meeting with someone to get it. The four men discussed a plan for getting the marijuana. Fabian and Alfredo were going to meet with a person who had marijuana and rob him. They expected the victim to have twenty pounds of marijuana on him.

"Based on the plan, Fabian and Alfredo were going to meet with the victim and convince him to get into their car with the marijuana. D'Arte and Molina were supposed to wait for them at an apartment complex on Cawston Avenue. Once Fabian, Alfredo and the victim were parked at the apartment complex, the plan was for D'Arte and Molina to pull the victim out of the car and fight with him while Fabian and Alfredo drove off with the marijuana. During the discussion about the plan, Fabian and Alfredo each pulled out .45 caliber handguns.

"That same day, when Fabian and Alfredo left Molina's apartment, Molina and D'Arte drove to the apartments on Cawston Avenue and parked. After waiting for some time, Molina saw the Dodge Magnum arrive and park. Molina and D'Arte approached the rear side of the Dodge.

"Molina saw Alfredo, who was seated in the rear passenger-side seat, grab the victim in the front passenger seat around the neck and put a gun to his head. Molina also saw Fabian, who was in the driver's seat, turn toward

4

the victim. Molina then heard a shot. The passenger door opened and the victim fell out of the car. Alfredo then got into the front passenger seat and D'Arte jumped into the back seat. As the Dodge backed up, Molina ran to his car and returned to his apartment.

"Alfredo, Fabian and D'Arte arrived at Molina's apartment approximately five minutes after Molina. Alfredo and Fabian were both upset about the shooting. Fabian left that day but Alfredo stayed the night at Molina's apartment.

"On the day of the shooting, several residents of the Cawston Avenue apartments saw the Dodge at the apartment complex. Residents also saw two men approach the car, heard a shot and then saw the victim fall out of the parked car. They then saw one of the two men who had approached the car get into it and the other man run away. Residents then observed the Dodge speed out of the apartment complex driveway.

"Officers were dispatched to the location of the shooting at 4:41 p.m. Officer Derek Maddox found the victim lying on his back in a flower bed. The victim had died from a gunshot wound. If the victim had been in the front passenger seat, his wound was consistent with being shot from close proximity on the left side.

"Police arrested Fabian in July 2006 and prepared a wanted poster for Alfredo. The poster included Alfredo's picture, date of birth, and physical characteristics. It also stated, '[Alfredo], along with his brother and cousin, were involved in a 20 [pound] marijuana drug rip off with the victim of this case. The victim was shot to death with a .45 caliber handgun during this incident.'

"The Kern County Sheriff's special operations group located Alfredo in January 2011. When Deputy Raul Murrillo initially asked Alfredo his name,

5

Alfredo identified himself as 'Rafael.' When asked again, Alfredo repeated his name was 'Rafael.' When asked if his name was Alfredo, Alfredo responded that it was not. Deputy Murrillo showed Alfredo the wanted poster with Alfredo's picture and asked Alfredo yet again if he was Alfredo Felix. Alfredo looked at the poster, shook his head to suggest 'no' and then put his head down. Police found no information connecting the name 'Rafael' with Alfredo."

## DISCUSSION

## I

## Legal Principles

Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437) was enacted to " 'amend[ ] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Section 1170.95, subdivision (c) provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to

6

make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

When a trial court reviews a petition for resentencing, the court first determines if the petitioner has shown a prima facie case for relief under the statute. If so, the court must issue an OSC and hold an evidentiary hearing on the petition. (*People v. Lewis* (2021) 11 Cal.5th 952, 962 (*Lewis*).) However, the court may deny the petition if the person is ineligible as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980-981.) The court may review the record of conviction, including any prior appellate opinion, to determine if the petitioner's allegations are rebutted by the record. (*Lewis*, at p. 972.) However, the court may not engage in factfinding and weighing credibility at the prima facie stage of petition review. (*Drayton*, at pp. 979-980.)

The court in *Lewis* went on to explain the process of reviewing petitions for resentencing under section 1170.95. The court said: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid*.)

7

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id*. at p. 972.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid*.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95], subdivision (c)." (*Ibid*.)

II

Analysis

The question of how courts should use pre-*Banks* and *Clark* special circumstances in reviewing resentencing petitions under section 1170.95 in evaluating any prima facies showing of eligibility is before our Supreme Court. Ultimately, our high court will provide direction to the courts. Until then, we will follow our decision in *Arias*, *supra*, 66 Cal.App.5th 987, review granted. There, we examined the same issues that are before us in this case. We concluded that a resentencing petition could not be denied at the prima facie stage of review based solely on a true finding on a pre-*Banks* and *Clark* robbery murder special circumstance. We continue to believe the analysis of the issues in *Arias* is correct and will apply it here.

On this record, the court could not find Alfredo, an aider and abettor, to be a major participant in the crime while acting with reckless disregard for human life without factfinding, which is not permitted at the prima facie review stage of a petition for resentencing under section 1170.95 in light of

8

*Lewis*, *supra*, 11 Cal.5th at p. 974.  Accordingly, we find the court erred in denying the petition without first issuing an OSC and conducting an evidentiary hearing.

## DISPOSITION

The order denying Alfredo's petition for resentencing under section 1170.95 is reversed.  The matter is remanded to the superior court with directions to issue an OSC and conduct an evidentiary hearing as required by statute.  We express no opinion regarding the potential results of such hearing.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.